NORTHWEST COMMUNITY
HOSPITAL, Appellee,

v.

The BOARD OF REVIEW OF the CITY OF DES MOINES, Iowa, and Ambrose T. McNerney, Chairman, Appellants.

No. 2-56852.

Supreme Court of Iowa.

May 21, 1975.

Rehearing Denied June 16, 1975.

Allan A. Herrick and Jeffrey E. Lamson, of Herrick, Langdon, Belin & Harris, Des Moines, for appellants.

John H. Neiman and Richard L. Martyn, of Neiman, Neiman, Stone & Spellman, Des Moines, for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

The question presented is whether the property of Northwest Community Hospital (plaintiff) should be exempt from taxation under § 427.1(9), The Code. Defendant Board of Review determined the property was not used by a charitable institution solely for its appropriate objects and hence was subject to taxation. The trial court reversed this determination and the Board brought this appeal. We reverse and remand.

Plaintiff was organized as an Iowa non-profit corporation. The real estate which is subject to this litigation is used as a hospital. In 1972 plaintiff was facing economic difficulties and was placed in receivership for failure to meet its obligations to its bondholders. On December 6, 1972 Hospital Affiliates, Inc., a Tennessee corporation, offered to purchase the hospital for $1,955,-000. Hospital Affiliates has a net worth of over $26,000,000 and operates 30 hospitals. The offer to purchase plaintiff was never accepted but did lead to a series of transactions and ultimately to agreements, entered in February 1973.

Pursuant to a promissory note dated February 1, 1973, payable on demand, Hospital Affiliates loaned plaintiff $529,000. As security plaintiff granted Hospital Affiliates a security interest in plaintiff's accounts receivable (including those which may come into existence in the future), and in plaintiff's furniture, fixtures, equipment, all inventory of materials and supplies, and a mortgage (subject to two prior mortgages) on plaintiff's real estate. At trial plaintiff had paid $5000 on the note leaving a balance of $524,000.

Also on February 1, 1973 Hospital Affiliates (acting through its subsidiary Hospital Management Corporation) and plaintiff entered into an agreement whereby Hospital Management Corporation would manage plaintiff hospital for a fee equal to seven percent of the hospital's "net revenues." "Net revenues" were defined as gross revenues less bad debts and adjustments for Medicare, Medicaid, and other third party reimbursements. The seven percent fee was to be computed after payments of principal and interest to bondholders and other creditors. The management agreement was to last ten years with automatic extensions in the absence of 90 day termination notice by either party.

Significantly, on the same date plaintiff and Hospital Affiliates entered into an option agreement whereby Hospital Affiliates could at any time after April 1, 1975, and prior to termination of the management

agreement, purchase all assets of plaintiff hospital existing on the date the option was exercised by assuming all plaintiff's liabilities existing on that date.

On March 8, 1973 Hospital Affiliates loaned plaintiff another $93,000 which plaintiff repaid March 14, 1973. Plaintiff hospital has since operated under this arrangement. The hospital administrator is an employee of Hospital Affiliates, Inc., not plaintiff.

Plaintiff's financial statement as of December 31, 1972 showed assets of $2,587,-760.29 and liabilities of $2,443,730.96 or a net worth of $144,029.33. A financial statement as of August 31, 1973 showed assets of $2,808,928.04 and liabilities of $2,510,-714.41 for a net worth of $298,213.63.

Under these facts defendant Board of Review thought Hospital Affiliates, Inc., a profit corporation with the sole power to vest itself of all plaintiff's assets, was actually using the property in question. Hospital Affiliates, Inc. used the plaintiff hospital with a view of pecuniary profit and should not, in the view of the Board, qualify for a tax exemption under § 427.1(9). This section provides in pertinent part:

"The following classes of property shall not be taxed:

"9. All grounds and buildings used * * * by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely for their appropriate objects * * *."

The Board argues it is unimportant plaintiff was organized and first operated as a nonprofit corporation because Hospital Affiliates, Inc., a pecuniary corporation, has the option to assume the assets of the hospital by assuming its liabilities. During the period from December 31, 1972 to August 31, 1973, under management of the subsidiary of Hospital Affiliates, Inc., plaintiff increased its net worth approximately $154,184.30. The Board points out the profit realized from operation of the hospital can be used either (1) to increase the hospital's assets or (2) to decrease the hospital's debts. In either event the Board argues this will directly benefit Hospital Affiliates when the option is exercised. If plaintiff decreases its liabilities Hospital Affiliates will pay less to acquire the assets; if plaintiff's assets increase Hospital Affiliates will take more at the same cost. The net worth of plaintiff, so long as it continues to operate at a profit, will increase and Hospital Affiliates can reap the benefits of the increase without having to spend more money. This all works to the advantage of a profit-making corporation at a time when the plaintiff hospital is being managed by its subsidiary.

The trial court ruled plaintiff remained a nonprofit corporation because there had been no actual change in its corporate structure and the option to purchase has not been exercised. On that basis the trial court agreed with plaintiff and found plaintiff's property tax exempt under § 427.1(9).

I. We last considered § 427.1(9) in Evangelical Lutheran G. S. Society v. Board of Review, Des Moines, 200 N.W.2d 509 (Iowa 1972). We reviewed the general principles as follows:

"The following applicable legal principles are well established. Statutes exempting property from taxation must be strictly construed. If there is any doubt upon the question, it must be resolved against the exemption and in favor of taxation. The burden is upon one claiming exemption to show that the property falls within the exemption statute. (Authorities).

" * * * 'The current trend in other jurisdictions is to curb and restrict the exemption claimed here.' [Citing Wisconsin Evangelical Lutheran Synod v. Regis, 197 N.W.2d 355, 357.] Support for such a trend is found in the testimony of Mr. Regis, Des Moines City Assessor, that approximately 26½ percent of the property in the City of Des Moines is exempt from taxation.

"The objects and purposes of the corporation as expressed in its articles of incorporation are not controlling in determining the question of exemption. This question must be determined from the use made of the property rather than the declarations made in its articles of incorporation. (Authorities)." 200 N.W.2d at 511.

We think the Board was right in refusing to be swayed by plaintiff's tenuous ownership of the real estate in question. Under the arrangement all profit earned on the premises benefits a profit-making corporation.

Under the trial court ruling a profit-making corporation could purchase a tax exempt status by leaving token ownership in a tax exempt vendor and retain the advantage of the exempt status. It was error for the trial court to hold the property was exempt.

Reversed and remanded.