## SOUTHSIDE CHURCH OF CHRIST OF DES MOINES, Iowa, Appellant,

v.

## DES MOINES BOARD OF REVIEW et al., Appellees.

### No. 57074.

Supreme Court of Iowa.

June 30, 1976.

James F. Fowler, Indianola, for appellant.

Allan A. Herrick and Jeffrey E. Lamson, Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and HARRIS, JJ.

MASON, Justice.

This is an appeal by Southside Church of Christ of Des Moines from the decree of the Polk district court sustaining the decision of the Board of Review of the City of Des Moines denying the Church an exemption for a residence property owned by it described as Lot 18, Magnolia Park Plat 3, Des Moines, Iowa, for the reason the property was not solely used for charitable or religious purposes within the meaning of section 427.1(9), The Code, 1973. This statute under which the Church, as plaintiff, claims the exemption provides in part:

"The following classes of property shall not be taxed:

" * * *

"9. Property of religious, literary, and charitable societies. All grounds and buildings used or under construction by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely for their appropriate objects, not exceeding three hundred twenty acres in extent and not leased or otherwise used or under construction with a view to pecuniary profit." This statute appears without change in the 1975 Code.

■ The burden is upon one claiming tax exemption to show the property falls within the exemption statute. *Wisconsin Evangelical Lutheran Synod v. Regis,* 197 N.W.2d 355, 356 (Iowa 1972); *Evangelical Luth. G. S. Soc. v. Board of Rev., Des Moines,* 200 N.W.2d 509, 511 (Iowa 1972); and authorities cited in these opinions.

The trial court concluded plaintiff had failed to establish that the property involved was used solely for charitable and benevolent purposes.

■ In tax exemption cases "our review is *de novo.* * * * [citing authority]." *Aerie 1287, Frat. Order of Eagles v. Holland,* 226 N.W.2d 22, 24 (Iowa 1975).

Thus, " * * * it is this court's responsibility to review the facts as well as the law and adjudicate rights anew on those propositions properly presented, provided issues have been raised and error, if any, preserved in the course of the trial court's proceedings. While weight will be given to the findings of the trial court this court will not abdicate its function as triers de novo on appeal. * * * [citing authority]." *Mulford v. City of Iowa Falls,* 221 N.W.2d 261, 267 (Iowa 1974).

The Church was incorporated in the fall of 1967. The articles of incorporation provided the Church corporation was being organized for the "objects and purposes" of establishing " * * * a church to provide for people of good faith a program of concentrated religious education and training, together with facilities for and programs of benevolent work for orphaned and foster children and widows, * * * ."

Around the time of incorporation, arrangements were also made for the purchase of property. Lloyd A. Deal, a Church elder, testified payments on the property commenced in July 1968. To effect the objects and purposes of the corporation, the Church purchased several lots, including Lot 18, Scandia Magnolia Park, plat 3, in Des Moines (111 Southeast Emma Avenue) upon which was built a five bedroom home. Deal stated the house was constructed as a "benevolent child's care home" with the possibility it would also be the Church parsonage.

Construction of this house was part of a larger plan by the Church to provide several homes with family type living for small numbers of foster children. To this end inquiry was made to the Iowa Department of Social Services regarding building standards for foster child placement. A local agency was also checked as to family requirements. In short, the Church contemplated family type living conditions for foster children. The Church itself provided special training in "christian parenthood" in this connection for married couples.

The need for family type foster care is beyond question. Byron Bissell, Assistant Director of Social Services for the Polk County Department of Social Services testified the family type home is a more desirable form of care than the "group home" and institution type. It was further adduced the family type situation, in addition to being the best, is also the least expensive. In this connection, "foster care specialist" Darlene Clark wrote the Des Moines legal aid office that the average cost to government in the family type situation is $119.37 per child per month as opposed to, for example, $546.32 in the public institution setting.

Mr. Bissell also testified there is a shortage of foster homes in Polk County, especially those which will accept older children. When a child is over ten years old, "we very quickly run out of available foster homes." It is apparent homes not placing restrictions on the type of children accepted are few and far between.

With these needs in mind, the home in controversy was built. In addition to having five bedrooms, there were three bathrooms, a large kitchen and family room. It was the policy of the Church only couples who were Church members would be eligible to act as foster parents. When a couple was selected, trained and licensed, they would move into the home rent-free. The Church provided major maintenance and paid the mortgage and all utilities except personal long distance calls. Operating funds consist of "free-will contributions of the congregation," and are part of the Church's regular budget.

The first couple selected was Mr. and Mrs. Douglas Clark. Due to a health problem, the Clarks were replaced by Mr. and Mrs. James G. Holder in the summer of 1971. Holder testified the couple's own home did not meet state qualifications for foster care. Thus, they and their three children moved to the Church home for the purpose of providing foster care.

Records indicate the Holders had two foster children in the home from February 23, 1972 through August 18, 1972. Holder testified the two girls were eight and ten years old. Then, from October 23, 1972,

through April 1973, there were two foster children seven and eight years old. The Holders were paid $100.00 monthly for each child. It was testified this money is derived mostly from the county juvenile court fund, although some state and federal funds are also involved. At the time of the hearing, the Holders had a 15-year-old mentally and physically handicapped child living with them for whom they are paid $107.50 monthly. It was noted the Holders are paid on the same basis as other private family foster homes. Byron Bissell stated there was nothing unusual about the amount of time foster children were in the Holder home during 1972.

Upon cross-examination of James Holder, it was adduced that while no rent is charged by the Church, the Holders donate an average of $200 monthly to the Church. Holder contended this did not constitute payment for living in the house and that since moving into the house, their donations have "not necessarily" increased, although they might have due to a salary increase and obligation decrease. (Mr. Holder is a full-time purchasing agent for Wilson and Company).

The record reveals the Church applied several times for property tax exemptions on the property. In 1969, the Board of Review granted an exemption on the lot when it was utilized as a church parking lot. Again in 1970, the exemption was granted when the house was being constructed for benevolent child care *and use as a parsonage.* The 1971 and 1972 applications based on the reason the property was being utilized for benevolent child care only were denied. It is the 1972 exemption denial which generated this appeal.

April 4, 1972, plaintiff filed the claim for tax exemption with the Des Moines City Assessor. The Board of Review denied the application May 22, whereupon plaintiff filed a written protest. June 13 the Board of Review denied the protest. The Church then appealed from the action of the Board of Review to the Polk district court.

I. One of the questions presented for review by the appeal stems from the

Church's attack directed to certain findings of fact by the trial court which the Church contends are neither supported by substantial evidence nor "fair and reasonable inferences from the evidence."

In the particular paragraphs of the findings assailed by the Church the trial court stated:

"3. The Holders say they pay no rent but they do pay $200.00 a month to the Church which they and the Church call a donation.

" * * *

"6. Plaintiff offered in evidence as Exhibit '6' its claim for exemption for 1970 which alleged said Lot 18 was to be used as a parsonage, and the exemption was granted.

"7. In its claim for exemption of said Lot 18 for 1971, plaintiff failed to allege either it was to be used as a church parking lot or parsonage and the exemption was denied.

" * * *

"11. Insofar as the care of foster children is concerned, this home is in competition with some 80 other private homes in Des Moines engaged in caring for foster children."

The principal question involved in this matter is whether the Church sustained its burden of showing the property involved falls within the exemption statute set out earlier.

In making this determination in this equitable proceedings we are not bound by the findings of the trial court. It is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented. See *Mulford v. City of Iowa Falls,* 221 N.W.2d at 267 and *In re Marriage of Jennerjohn,* 203 N.W.2d 237, 240 (Iowa 1972).

As we view the Church's contentions concerning the findings of fact, they challenge the trial court's conclusion that the Church failed to establish the property is used solely for charitable and benevolent purposes

which, as stated, is the principal dispute in this matter.

It is argued since the property is owned by a charitable, benevolent or religious organization and the maintenance of a foster home is an appropriate object of such an organization, denial of the exemption is "contrary to the spirit" of tax exemption laws. Various arguments are made concerning the superiority of the single family foster setting over other types.

■ The general principles with reference to section 427.1(9) have been reviewed on numerous occasions and are likewise well established. " ' * * * Statutes exempting property from taxation must be strictly construed. If there is any doubt upon the question, it must be resolved against the exemption and in favor of taxation. The burden is upon one claiming exemption to show that the property falls within the exemption statute. (Authorities).

" ' * * * "The current trend in other jurisdictions is to curb and restrict the exemption claimed here." [Citing Wisconsin Evangelical Lutheran Synod v. Regis, 197 N.W.2d 355, 357]. * * *

■ " 'The objects and purposes of the corporation as expressed in its articles of incorporation are not controlling in determining the question of exemption. This question must be determined from the use made of the property rather than the declarations made in its articles of incorporation. (Authorities).' * * * *." [Quoting from Evangelical Luth. G. S. Soc. v. Board of Rev., Des Moines, 200 N.W.2d at 511]. N. W. Commun. Hosp. v. Board of Review, Etc., 229 N.W.2d 738, 740–741 (Iowa 1975).

The trend toward disallowing exemptions " * * * flows from the increasing extent and value of exempt property not on the tax rolls, and the resulting impact of such exemptions on the property taxpayer." Wisconsin Evangelical Lutheran Synod v. Regis, 197 N.W.2d at 357. Thus, although the Church provides a manifestly laudable service in the form of this foster care home, it is apparent the battle to win exemption has become an increasingly uphill one.

In Dow City Senior Cit. Hous. v. Bd. of Review, 230 N.W.2d 497 (Iowa 1975), plaintiff was a nonprofit corporation organized to construct and operate a low-rent housing facility for the elderly. Local businessmen donated their time and effort in pursuit of the corporation's organization. The land was donated by an association and cleared by volunteers. Some $675.00 in donations was raised. The remaining financing was obtained by means of an FHA loan. There was, however, a fixed rent required to be paid. No concessions to the needy were made. The supreme court stated:

"Exemption statutes are premised on the theory that benefits received by the community from exempted uses outweigh the inequality caused by exemption of the property from taxation. They are 'a legislative recognition of the benefits received by society as a whole from properties devoted to appropriate objects of exempt institutions and the consequent lessening of burden on the government.' South Iowa Methodist Homes v. Board, 257 Iowa 1302, 1305, 136 N.W.2d 488, 490 (1965)." 230 N.W.2d at 499.

In denying the exemption, the supreme court noted simply because a corporation is nonprofit and meets a real need of the community does not make it charitable or benevolent under section 427.1(9), The Code.

Several years earlier, this court abandoned the reasoning upon which two decisions were based allowing tax exempt status to a college professor's residence located on campus, The Trustees of Griswold College v. State of Iowa, 46 Iowa 275, and to residence of a "Director of Christian Education and Minister of Music," furnished as part of compensation, Trinity Lutheran Church v. Browner, 255 Iowa 197, 121 N.W.2d 131. In Wisconsin Evangelical Lutheran Synod v. Regis, supra, the church furnished a church day school teacher with a home. The court, deciding to "break the bough of logic bent by Griswold and Trinity" denied the exemption.

It was reasoned the house was used as a home of an employee and his family along

with which came a complete right of privacy. The teacher was neither required to live in the residence nor to conduct employment functions therein. " * * * A church seeking tax exemption for employee housing facilities must do more than merely show the property is owned by the church and occupied by church personnel. From the facts we conclude this house was leased to * * * [the teacher] with a view to pecuniary profit." 197 N.W.2d at 357.

█ It is against this state of the law that the Church must establish its burden. To that end, it has been shown the Church, through donations of its members, built a single family dwelling for the purpose of providing children with foster care. The need for family foster care, as well as its benefits, is apparent. The home is provided rent-free to the foster parents who here make extremely substantial voluntary donations to the Church. It is understood the parents are to render certain duties while living in the home. In any event, it is obvious the foster parents are receiving a substantial private benefit. In addition, they are virtually guaranteed an amount in excess of $100 per month for each foster child they maintain.

In reality, this home is equivalent to the 80 other private family foster homes in Des Moines but for the fact this one is owned by a church. These private homes are not tax exempt, even though they too obviously benefit society on exactly the same terms and are "nonprofit" as to foster care rendered.

This court must, as stated, weigh the benefits received with the inequality caused by exemption. "*Any* doubt" must be resolved against exemption. Viewing the present facts in this light, there is doubt this property "is used solely for charitable and benevolent purposes."

From our de novo review we conclude the Church did not fulfill its burden despite the fact it is a nonprofit religious organization providing beneficial services to the community. Where anything is devoted to a sole and particular use it must be used exclusively for such purpose.

The trial court was correct in dismissing the Church's appeal from the denial of exemption by the Des Moines Board of Review. The case is

Affirmed.