**FRIENDSHIP CENTER WEST, INC., Appellant,**

v.

**Donald G. HARMAN, Chairman, Board of Review of the City of Marshalltown, Iowa, and Members of the Board of Review of the City of Marshalltown, Iowa, Appellees.**

No. 89–1433.

Court of Appeals of Iowa.

Oct. 23, 1990.

Roger R. Schoell of Grimes, Buck, Schoell & Beach, Marshalltown, for appellant.

Patrick W. Brooks of Brooks, Ward & Trout, Marshalltown, for appellees.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

Appellant Friendship Center West, Inc., a nonprofit corporation and retirement center appeals a district court judgment affirming the Marshalltown Board of Review's decision denying it tax exempt status. Appellant attacks the district court's conclusion that it is not entitled to a tax exemption as

provided in Iowa Code section 427.1(9). We agree with the district court's conclusion and affirm the judgment and decree.

Friendship Center West (FCW) was founded in 1984 and incorporated under the Iowa Nonprofit Corporation Act, Iowa Code § 504A.1 et seq. (1983). Its articles of incorporation stated:

The corporation is formed for purely charitable purposes....

The purposes of the corporation are to provide housing needs for aged and retired persons in need of said housing, and to enhance and develop the quality of life for those persons and to generally engage in such other charitable, benevolent, and educational endeavors as are necessary to, convenient for, or incidental to such objects and purposes.

Like sentiments are expressed again elsewhere in the articles.

FCW was the brain child of a Marshalltown ministerial alliance of six pastors plus community leaders who sought and realized a goal of converting an old hospital building into a retirement community. To this end, FCW raised approximately $1.3 million in gifts and pledges and $5.5 million through small business development bonds. The building was renovated and now contains seventy-five independent living units, four short-term nursing care or post-hospital recuperative units, a dining facility, and common areas. The common areas include a library, a chapel, a laundry, a game room, a swimming pool, a crafts area, a reception office, guest rooms, and meetings rooms. Significant for our purposes, the common areas also include a barber or beauty shop, an ice cream shop, and a convenience store.

Residents pay an entrance fee that depends on the size of the living unit. These fees range from $20,000 to $68,000 for an individual, but the fee is increased by $2,000 if a couple takes up residence. Each resident is then entitled to lifetime residence and services, but residents acquire no real interest in the unit or the project.

Each resident pays a mandatory monthly service fee. The fee ranges from $500 to $865 per month, and an additional $225 extra person fee is charged for couples.

The basic fee covers an unfurnished living unit, bi-weekly cleaning, one meal per day (tray service or special diets if necessary), a garden plot, basic utilities, parking, scheduled transportation, planned activities and common areas, and an emergency call system. Residents may obtain additional meals or a garage for an additional fee.

To apply for residency, one must be at least 62 years of age and, at least initially, be in sufficiently good health to live without assistance. Upon taking up residency, all residents must maintain Medicare coverage, if eligible, and participate in FCW's comprehensive health care plan. A portion of each monthly fee is placed in a fund for nursing care.

FCW's stated policy is that residency will not be terminated because of a resident's inability to pay the monthly service fee. If inability is proven, FCW may subsidize the resident's fee; however, in its short existence, this has never happened. Moreover, the record demonstrates that FCW extensively screens an applicant's health and finances, presumably minimizing the risk that FCW will have to underwrite a resident's expenses. Applicants must disclose any severe or chronic health problems and provide a current doctor's report. Applicants must also have adequate assets to pay all current fees and to provide for future financial security. Some applicants had to obtain a guarantor before they were considered. FCW maintains the right to terminate a residency if the monthly service fee is in default for three months. The evidence also shows that persons who did not meet the financial requirements were, in no uncertain terms, deterred from even applying.

The record reveals that there was no money available for financial assistance. The funds on hand are from entrance and monthly service fees, and the fee represents the cost of all services given. Any assistance given appears to have come from outside sources.

FCW sought and received tax exempt status from the Internal Revenue Service and the Iowa Department of Revenue. FCW also sought tax exempt status from

the Marshalltown City Assessor under Iowa Code section 427.1(9), which states, in pertinent part, that the following property may not be taxed:

> 9. *Property of religious, literary, and charitable societies.* All grounds and buildings used or under construction by ... charitable, benevolent, ... and religious institutions and societies solely for their appropriate objects, ... not leased or otherwise used or under construction with a view to pecuniary profit....

Iowa Code § 427.1 (Supp.1989). The assessor denied the application, finding that FCW did not meet charitable guidelines for tax exemption. FCW appealed to the Marshalltown Board of Review, but it likewise determined FCW had failed to prove that the petitioned property is used solely for the appropriate objects as defined in Iowa Code section 427.1. FCW then appealed to the district court, which affirmed the board's decision.

FCW broadly contends the district court erred in concluding that the property was not entitled to exemption under section 427.1(9). Its argument tends to focus on its claim that it is performing "charity." Appellees contend that FCW failed to carry its burden showing entitlement to an exemption based on charitable operations; however, they focus on the requirement of section 427.1(9) specifying that "[a]ll grounds and buildings" be used for "appropriate objects" and that they "not [be] leased or otherwise used ... with a view to pecuniary profit."

■ The petition in the district court was in equity seeking review of the review board's decision denying tax exempt status. The district court found, and we concur, that tax exemption appeals are equitable in nature. *Southside Church of Christ v. Des Moines Board of Review,* 243 N.W.2d 650, 651–52 (Iowa 1976); *Aerie 1287, Frat. Order of Eagles v. Holland,* 226 N.W.2d 22, 24 (Iowa 1975). Our scope of review, therefore, is de novo. Iowa R.App.P. 4. While we are not bound by the trial court's findings of fact, we give weight to them, especially when those findings depend on the credibility of witnesses. Iowa R.App.P. 14(f)(7).

■ Statutes exempting property from taxation must be strictly construed. *Southside Church of Christ,* 243 N.W.2d at 654; *Holland,* 226 N.W.2d at 24; *Evangelical Lutheran Good Samaritan Society v. Board of Review,* 200 N.W.2d 509, 511 (Iowa 1972); *Wisconsin Evangelical Lutheran Synod v. Regis,* 197 N.W.2d 355, 356 (Iowa 1972). Any doubts are resolved in favor of taxation. *Southside Church of Christ,* 243 N.W.2d at 655; *Regis,* 197 N.W.2d at 356. The exemption claimant carries the burden of showing the property falls within the exemption statute. *Southside Church of Christ,* 243 N.W.2d at 651; *Holland,* 226 N.W.2d at 24–25; *Evangelical Lutheran Good Samaritan Society,* 200 N.W.2d at 511; *Regis,* 197 N.W.2d at 356 (Iowa 1972).

■ The actual use of the property governs whether an exemption should be granted. Statements of purpose in an organization's articles of incorporation and its nonprofit status are not controlling. *Evangelical Lutheran Good Samaritan Society,* 200 N.W.2d at 511; *South Iowa Methodist Homes, Inc. v. Board of Review,* 173 N.W.2d 526, 530, 532 (Iowa 1970). Whether the organization and its "appropriate objects" are charitable is a question of fact. *Dow City Senior Citizens Housing, Inc. v. Board of Review,* 230 N.W.2d 497, 499 (Iowa 1975); *see also Southside Church of Christ,* 243 N.W.2d at 655. "Homes will be taxed where 'admission is limited to the physically and financially independent.'" *Atrium Village, Inc. v. Board of Review,* 417 N.W.2d 70, 72 (Iowa 1987) (quoting *South Iowa Methodist Homes,* 173 N.W.2d at 533).

■ First we examine appellees' contention that FCW is not entitled to an exemption because "[a]ll grounds and buildings" are not being used for "appropriate objects" because they are "leased or otherwise used ... with a view to pecuniary profit." The record indicates that FCW receives 20 percent of the income from a lessee beauty shop housed in its facility.

The record also indicates that FCW leases garages to its tenants. FCW claims that the presence of the beauty shop is merely an attempt "to insure that its residents [have] additional services available to them on premises."

Strictly construing the exemption statute, *Southside Church of Christ,* 243 N.W.2d at 654, and resolving doubts against the exemption claimant in favor of taxation, *id.* at 655; *Regis,* 197 N.W.2d at 356, we conclude that the leasing of the beauty shop causes FCW to fall out of the exemption statute. In clear and unambiguous language, the legislature has created a specific condition precedent to granting exemption status, that is that *all* grounds and buildings, in this case, be used for charitable objects, and it further states in unambiguous language that these same grounds and buildings neither be leased nor otherwise used for pecuniary profit. We are bound to give statutes reasonable interpretations based on what the legislature has said, Iowa R.App.P. 14(f)(13), and here it appears that "all" means *all. Holland,* 226 N.W.2d at 25 (finding fraternal organization "did not sustain its burden to prove this building was used *solely for appropriate objects*" (emphasis added) (citing *Lacy v. Davis,* 112 Iowa 106, 83 N.W. 784 (1900))).

Although relying on the "pecuniary profit" aspect of section 427.1(9) rather than the leasing aspect, the court in *Aerie 1287, Frat. Order of Eagles v. Holland,* 226 N.W.2d 22 (Iowa 1975), clearly indicates that it is the exemption claimant's burden to show that facilities are used "solely" for the "appropriate objects." *Holland* also included a claim for a partial exemption under Iowa Code section 427.1(23) (1975), which the supreme court granted. We have no such claim before us.

■ Although we believe this determination disqualifies FCW from exemption under section 427.1(9), we also address FCW's contention that it operates as a charitable institution and its objects are charitable. After a comprehensive analysis of the case law and a comparison of various aspects of this case with prior cases, the district court concluded that FCW was not a charitable institution. Our de novo review of the record leads us to the same conclusion, and we hold that Friendship Center West is not entitled to an exemption because it is not a charitable institution and its objects are not charitable as required by Iowa Code section 427.1(9).

The supreme court has recognized that its recent decisions have "tightened the exemption" available under section 427.-1(9). *Parshall Christian Order v. Board of Review,* 315 N.W.2d 798, 801–02 (Iowa 1982) (citing, *inter alia, Southside Church of Christ,* 243 N.W.2d at 654; *Dow City Senior Citizens Housing,* 230 N.W.2d at 499). Consequently, the trial court and the litigants have focused on four cases: *Atrium Village, Inc. v. Board of Review,* 417 N.W.2d 70 (Iowa 1987); *Richards v. Iowa Department of Revenue,* 414 N.W.2d 344 (Iowa 1987); *Dow City Senior Citizens Housing, Inc. v. Board of Review,* 230 N.W.2d 497 (Iowa 1975); and *South Iowa Methodist Homes, Inc. v. Board of Review,* 173 N.W.2d 526 (Iowa 1970).

It appears to be common ground that facilities will not be entitled to an exemption if "admission is limited to the physically and financially independent." *Atrium Village,* 417 N.W.2d at 72; *accord South Iowa Methodist Homes,* 173 N.W.2d at 533. Exemption from federal income tax and inclusion in articles of incorporation of language stating its charitable design will weigh in favor of the facility. *Atrium Village,* 417 N.W.2d at 73; *Richards,* 414 N.W.2d at 351. Although a facility should not be denied exempt status because its residents pay entrance or monthly fees, *South Iowa Methodist Homes,* 173 N.W.2d at 533, " 'a truly charitable institution will make concessions on fees to residents unable to pay them.' " *Atrium Village,* 417 N.W.2d at 73 (quoting *Richards,* 414 N.W.2d at 353). Charity includes the "partly gratuitous improvement of spiritual, mental, social and physical conditions" of people, *Andrews v. YMCA,* 226 Iowa 374, 383, 284 N.W. 186, 192 (1939); however, not all "laudable" community contributions are charitable or benevolent within

the meaning of section 427.1(9), *Dow City Senior Citizens Housing*, 230 N.W.2d at 499.

In *South Iowa Methodist Homes*, on de novo review, the supreme court reversed district court and board of review decisions, finding retirement facility was entitled to a tax exemption. 173 N.W.2d at 533. The facility generally took a "room gift" from applicants, but the record reflected that, notwithstanding a policy of admitting only 10 percent of residents without a room gift, the facility had admitted 17 percent without a gift and 11 percent with only a partial gift. *Id.* at 530. In comparing cases, the supreme court found the foregoing fact and the fact that persons unable to pay monthly fees were subsidized to be "significant." *Id.* at 531. Although applicants submitted financial statements and personal histories, *id.* at 529, no evidence showed that this was used to screen out persons unable to pay. *Id.*

In *Dow City Senior Citizens Housing* the supreme court, on de novo review, affirmed a denial of a tax exemption to a low-income retirement facility. 230 N.W.2d at 500. Residents received housing only; consequently, they paid monthly rent and did not pay entrance or monthly fees. *Id.* Applicants were screened, but only to determine whether they fell *below* a certain level of income. *Id.* The facility did not make rent concessions, nor did it guarantee housing to persons unable to pay. *Id.*

In *Richards* the supreme court affirmed a district court judgment upholding the Iowa Department of Revenue's decision denying a taxpayer challenge to a retirement facility's tax exempt status. 414 N.W.2d at 354. The facility required an entrance fee and a monthly fee, both based on the size of the rental unit. *Id.* at 347. There was evidence, however, that " 'donations did result in a reduction in the payments which each and every resident was required to make,' which is in keeping with [the facility's] stated policy of granting charitable assistance to the residents." *Id.* at 348 (quoting revenue department director's findings).

In *Atrium Village* the supreme court, on de novo review, affirmed our decision, concluding the retirement facility at issue did not qualify under section 427.1(9) as being used for charitable or benevolent works. 417 N.W.2d at 73. The facility there did not charge an entrance fee, but had a fee system through which it attempted to break even. *Id.* at 71. When a resident's finances were "marginal," the facility required a guarantor, but no one had ever been unable to pay the fee, and no one in the facility had ever received Title XIX benefits. *Id.* Although there was an emergency reserve fund available to aid needy residents, no resident was ever informed of its existence, and no money from this fund had ever been expended. *Id.*

We think the present case is easily distinguished from *South Iowa Methodist Homes* and *Richards*. Unlike those cases, FCW did not consider anyone who could not pay monthly fees, much less those who could not afford the hefty entrance fee, or "room gift." Unlike those cases, there is no evidence that fees ever had been, or would be, deferred, but the evidence did show that, unlike the facilities in *South Iowa Methodist Homes* and *Richards*, persons who could not, or likely would not be able, to pay the fees were deterred from applying.

For these reasons, this case is similar to *Atrium Village* and somewhat like *Dow City*. As in those cases, anyone with marginal finances had to obtain a guarantor, and the facilities had never reduced or made concessions on fees. Like *Atrium Village*, FCW has carefully screened applicants and has actively discouraged from applying those who would be unable to pay their own way. Although this case is like *Richards* and unlike *Atrium Village* in its contractual obligation to provide housing for a resident's life regardless of the resident's ability to pay, *see Atrium Village*, 417 N.W.2d at 73; *Richards*, 414 N.W.2d at 348, the supreme court distinguished those cases on the *Atrium Village* facility's demonstrated "strong policy against admitting applicants or even retaining residents who are unable to pay the fees." *Atrium Village*, 417 N.W.2d at 73. We

have a similarly clear record before us demonstrating such a policy implemented by FCW. We note that even the *Atrium Village* facility, which apparently had no obligation to defray fees of residents on a lifetime basis, had emergency funds in reserve to help destitute residents defray their monthly fees, but FCW has not maintained such a fund. From the foregoing analysis, it seems perfectly clear that the practices of turning away those who might be unable to pay fees and of not making funds available to aid such persons, do not fall within the letter or the spirit of section 427.1(9) despite providing a valuable service to the elderly.

Strictly construing section 427.1(9), *Southside Church of Christ,* 243 N.W.2d at 654; *Holland,* 226 N.W.2d at 24; *Evangelical Lutheran Good Samaritan Society,* 200 N.W.2d at 511; *Regis,* 197 N.W.2d at 356, and resolving doubts in favor of taxation, *Southside Church of Christ,* 243 N.W.2d at 655; *Regis,* 197 N.W.2d at 356, we conclude that FCW has failed to carry its burden of showing the property falls within the exemption statute. *See Southside Church of Christ,* 243 N.W.2d at 651; *Holland,* 226 N.W.2d at 24–25; *Evangelical Lutheran Good Samaritan Society,* 200 N.W.2d at 511; *Regis,* 197 N.W.2d at 356 (Iowa 1972); *see also Dow City Senior Citizens Housing,* 230 N.W.2d at 499 (whether organization and its "appropriate objects" are charitable is question of fact). We find that the actual use of the property, which governs whether an exemption should be granted, *see Evangelical Lutheran Good Samaritan Society,* 200 N.W.2d at 511; *South Iowa Methodist Homes,* 173 N.W.2d at 530, 532, is not charitable or performing charitable objects.

We affirm the judgment and decree of the district court finding FCW ineligible for tax exempt status under section 427.1(9).

AFFIRMED.