**MAYFLOWER HOMES, INC., Appellee,**

v.

**WAPELLO COUNTY BOARD OF REVIEW, Appellant.**

**No. 90–801.**

Court of Appeals of Iowa.

May 29, 1991.

R. Timothy Starken, Asst. County Atty., and Richard J. Gaumer of Webber, Gaumer, Emanuel & Daily, P.C., Ottumwa, for appellant.

Donald J. Charnetski of Charnetski, Olson & Lacina, Grinnell, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

Mayflower Homes owns and operates two residential facilities for elderly people. This case involves "Myers on North Elm," its facility in Ottumwa, Iowa. Myers was built in 1964 under the testamentary trust of Ollie H.P. Myers. Mayflower acquired Myers when there were not sufficient funds to complete construction. Mayflower is a nonprofit corporation which was originally organized to provide retirement housing for elderly employees of the United Church of Christ. However, there is no denominational requirement for acceptance at Myers.

The purpose of the facility is to provide homes for aging people, as well as other needy or homeless people. Myers consistently loses money, and its operating costs are subsidized by gifts and bequests. Myers does not provide any health care but provides a type of intermediate care between living at home and a nursing home.

Residents of Myers are charged a one-time occupancy fee and monthly maintenance fees. Since 1964 the entrance fee has been waived in five instances. The monthly maintenance fees have never been waived.

Myers has been exempt from property taxes since its inception until 1988, when the Wapello County Assessor determined only ten percent of the facility was entitled to exemption under Iowa Code section 427.-1(9). Mayflower appealed to the Wapello County Board of Review. The Board upheld the assessor's determination on the ground the property was not being used solely for religious, charitable, or benevolent purposes.

Mayflower filed a petition for judicial review. The district court reversed the Board. The court found Myers served a benevolent purpose by keeping elderly residents out of nursing homes. The court also noted Myers was clearly not making a profit. The court held Myers was exempt from property taxation in its entirety. The Board now appeals.

The Board contends Myers should be subject to taxation for ninety percent of its value. It believes Mayflower is using

Myers to generate the cash flow to permit it to provide former church employees with endowment assistance. The Board states only ten percent of the apartments are made available for endowment assistance, and thus, only ten percent of the property is used for charitable purposes. It points out section 427.1(9) requires the property be used solely for charitable purposes.

Our scope of review in tax review cases is de novo. Iowa R.App.P. 4; *Friendship Center West, Inc. v. Harman*, 464 N.W.2d 455, 457 (Iowa App.1990).

> Statutes exempting property from taxation must be strictly construed. Any doubts are resolved in favor of taxation. The exemption claimant carries the burden of showing the property falls within the exemption statute.
>
> The actual use of the property governs whether an exemption should be granted. Statements of purpose in an organization's articles of incorporation and its nonprofit status are not controlling. Whether the organization and its "appropriate objects" are charitable is a question of fact. "Homes will be taxed where 'admission is limited to the physically and financially independent.'"

*Friendship Center*, 464 N.W.2d at 457 (citations omitted).

■ As our review is de novo, we look to the decision of the Board of Review. We find in our review of the cases, a determining factor is whether any nursing care is provided to the residents. *Atrium Village v. Board of Review*, 417 N.W.2d 70, 72 (Iowa 1987); *Dow City Senior Citizens Housing, Inc. v. Board of Review*, 230 N.W.2d 497, 499 (Iowa 1975). Our review of the record indicates no extra nursing care is provided to the residents of Myers.

Only five full or partial exemptions of the initial entrance fee have been granted since Myers opened its doors in 1964. The initial entrance fee ranges in size from $18,000 to around $50,000, depending upon the unit being acquired. One must be connected in some manner with a church in order to qualify for the exemption. The five exemptions granted amount to only about three percent of the total of about 165 such entrance fees since 1964.

Myers charges a monthly maintenance fee of around $200 to $300, depending on the size of the living unit. No monthly fee has ever been waived. We find this fact especially significant. Apparently the residents are able to maintain a moderate payment schedule even after paying a hefty entrance fee. No resident has ever been on Title XIX. Although Myers claims admission is not restricted to the financially independent, the record indicates otherwise.

The home does not admit those unable to provide care for themselves, as it provides no regular nursing care. "Homes will be taxed where 'admission is limited to the physically and financially independent.'" *Atrium Village*, 417 N.W.2d at 72 (quoting *South Iowa Methodist Homes v. Board of Review*, 173 N.W.2d 526, 533 (Iowa 1970)).

■ The fact Myers appears to operate at a loss is not controlling. It does not appear from the record whether the loss is real or simply a paper loss. Regardless, the ordinary taxpayer should not be asked to subsidize an operation simply because it chooses to operate at a loss. Nor is the fact Myers was established by a charitable endowment controlling. *See Atrium Village*, 417 N.W.2d at 72.

■ We are in doubt as to the tax exempt status of Myers. It appears to be maintained to provide low-cost elderly housing to those who can generally afford such accommodations. Doubts are resolved in favor of taxation. *Friendship Center*, 464 N.W.2d at 457.

Mayflower and its subsidiary Myers are free to provide low-cost housing to the elderly, but it is not free to offer such low-cost housing at the taxpayers' expense when the residents can afford such housing.

> Taxes lost to the public by reason of an exemption must be exacted from all other taxpayers. Hence the law requires that the institution be run for those who have a real need for it. If it is operated only for those who can well afford to pay

their taxes it is not right to pass that burden along to others.

*Atrium Village,* 417 N.W.2d at 73.

We determine the Board of Review was correct in its allocation of ten percent of Myers' property as tax exempt under Iowa Code section 427.1(23). Indeed, based on the record before us, this is a generous allocation. The Board's calculation apparently was based on Myers' claim it had reserved ten percent of its units for charitable cases. The record only reflects about a three percent charitable waiver of the entrance fee and *no* charitable waiver of the monthly maintenance fee.

We reverse the decision of the district court and affirm the Board of Review.

DISTRICT COURT REVERSED; BOARD OF REVIEW AFFIRMED.