The **EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, Appellee,**

v.

**BOARD OF REVIEW OF CITY OF DES MOINES, Iowa and L. L. Daubert, Chairman, Appellants.**

No. 55047.

Supreme Court of Iowa.

Sept. 19, 1972.

**510**

Herrick, Langdon, Belin & Harris, Des Moines, for appellants.

Beving & Swanson and Harvey L. Harrison, Des Moines, for appellee.

MOORE, Chief Justice.

We have before us defendants' appeal in three consolidated cases in which the trial court reversed the decision of defendant Board of Review and held plaintiff's real property tax exempt for the years 1968, 1969 and 1970.

The sole issue is the eligibility of plaintiff's Rest View property for tax exemption under Code section 427.1(9) which, as pertinent here, provides:

"The following classes of property shall not be taxed:

"9. All grounds and buildings used * * * by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely for their appropriate objects * * * and not leased or otherwise used * * * with a view to pecuniary profit. * * *."

Plaintiff, The Evangelical Lutheran Good Samaritan Society, in 1922 was organized and incorporated in North Dakota as a nonprofit and religious corporation. At all material times it has been authorized to do business in Iowa. Plaintiff-corporation is not connected with or controlled by any church and receives no financial direction or any other kind of direction from any Lutheran Church body.

In December 1967 plaintiff purchased Rest View Nursing Home from Charles Shindler. It was then one of 26 nursing homes in the City of Des Moines operating on the same general plan. Neither Rest View nor the other 25 nursing homes had ever made any claim for tax exemption. Plaintiff continued the same service in 1968 to Rest View's then 90 paying residents as that furnished by Shindler during 1967. In 1970 plaintiff changed from an extended care and nursing home to a custodial care home operation.

On January 30, 1968 plaintiff filed its claim for tax exemption, alleging said nursing home was used for charitable, benevolent and religious purposes. That and similar claims filed in 1969 and 1970 were denied by defendant-Board of Review. The three cases arising therefrom were consolidated for trial in the district court.

In addition to the facts already stated the trial evidence establishes plaintiff in 1967 had 118 homes with various types of operations in 14 states, 23 in Iowa. Most showed a profit. Some showed a loss. Of its 15-member board of directors six were administrators of facilities similar to Rest View. Their salaries ranged from $500 to $1000 a month. Rest View's administrator was being paid $850 a month. Rest View paid $360 a month as dues to the central office of the Society.

Plaintiff's total equity for its 118 centers was $17,201,211 as of December 21, 1967. The corresponding figure as of December 31, 1968, then 131 centers, was $19,794,964. For December 31, 1969, then with 132 centers, the equity increased to $22,533,006.

In other words, plaintiff's increase was approximately $2,000,000 for each year here involved.

The basic rate per patient per day at Rest View under plaintiff's operation as an extended care and nursing home was $14. As to most patients, that was paid by Medicare and Medicaid until those funds were no longer available. Medicaid was paid at a cost per day plus two percent for profit. Plaintiff in 1970 changed to primarily a custodial care home. Patients needing nursing care were moved to other nursing homes in the Des Moines area. The patients cared for in Rest View thereafter were on public welfare. Plaintiff's first Rest View administrator testified: "All patients have guarantors, son, daughter, or sister or somebody like that took care of the payments and the rest was welfare."

Plaintiff's auditor was unable to testify definitely whether during the years involved plaintiff had a net profit or a loss. The record does justify a finding of approximately $20,000 profit for 1968. The 1969 records are indefinite as the audit showed a possibility of an overcharge Medicaid claim of $105,000. The audit did not reflect a loss or profit due to uncertainty of the $105,000 item. Certainly plaintiff had not made such a refund. The change in 1970 from nursing to custodial care and the reduction from 90 to 41 occupants resulted in a loss of approximately $80,000.

Louis Shim, Rest View administrator at trial time, testified: " * * * we have lost sums of money on nursing home operations, and even though we have been subsidized by their funds, their funds are limited, and we cannot afford losing money to continue operating a nursing home."

The court then asked, "Subsidized from whom?" Shim answered, "From the Central Office." He further testified, "If somebody offered the price we bought it for I'm sure we would like to sell."

I. The following applicable legal principles are well established. Statutes exempting property from taxation must be strictly construed. If there is any doubt upon the question, it must be resolved against the exemption and in favor of taxation. The burden is upon one claiming exemption to show that the property falls within the exemption statute. Wisconsin Evangelical Lutheran Synod v. Regis, Iowa, 197 N.W.2d 355, 356; Trinity Lutheran Church v. Browner, 255 Iowa 197, 200, 121 N.W.2d 131, 133 and citations in each. See also 84 C.J.S. Taxation § 225.

As we point out in Wisconsin Evangelical Lutheran Synod v. Regis, supra, at page 357, 197 N.W.2d, "The current trend in other jurisdictions is to curb and restrict the type of exemption claimed here." Support for such a trend is found in the testimony of Mr. Regis, Des Moines City Assessor, that approximately 26½ percent of the property in the City of Des Moines is exempt from taxation.

II. The objects and purposes of the corporation as expressed in its articles of incorporation are not controlling in determining the question of exemption. This question must be determined from the use made of the property rather than the declarations made in its articles of incorporation. South Iowa Methodist Homes, Inc. v. Board of Review, Iowa, 173 N.W.2d 526, 530; Readlyn Hospital v. Hoth, 223 Iowa 341, 344, 272 N.W. 90, 91; Theta Xi Bldg. Ass'n v. Board of Review, 217 Iowa 1181, 1183, 251 N.W. 76, 77.

III. There is no evidence plaintiff ever cared for anyone as a matter of charity or benevolence. On the contrary the record discloses as to each it had assurance of payment by a public agency plus a guarantor. There is no evidence it operated as a religious institution. Plaintiff's claim of using its property solely for charitable and benevolent objects is not established by the evidence. $2,000,000 per year increase in assets and eagerness to sell a home showing a loss is strong evidence plaintiff's op-

eration was "with a view of pecuniary profit" which takes it out of the exemption provided for in Code section 427.1(9). Plaintiff failed to carry its burden of proving its tax exemption claim.

IV. Plaintiff, as did the trial court, relies heavily on our holding in South Iowa Methodist Homes, Inc. v. Board of Review, Iowa, 173 N.W.2d 526. It is factually different in several respects from the case at bar. South Iowa Methodist Homes, Inc., was a church organized, church sponsored, church disciplined and church financially-supported, single-unit home. Its real property was originally purchased with church funds and it received substantial contributions for its building fund from the South Iowa Annual Conferences. Its manager was an ordained Methodist minister assigned to that position by the Bishop. No application for admittance was ever turned down because of financial reasons. Some residents were nonpaying. South Iowa enjoyed the services of an active 150 Women's Guild. It could not have operated except for gifts and contributions.

Reversed and remanded to the district court for entry of judgment in conformance herewith.

All Justices concur, except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

I respectfully dissent. This case cannot be distinguished logically from South Iowa Methodist Homes, Inc. v. Board of Review, 173 N.W.2d 526 (Iowa 1970), hereafter called Wesley Acres. I believe it unwise to overrule established precedent at a time when the legislature is known to be studying tax exemption statutes and considering an extensive revision. The question is not whether the exemption is wise, appropriate or should exist. The question is whether under the statute and the established principles it does exist. When so

inclined the courts observe legislative inaction, following a court's statutory interpretation, results in something akin to tacit ratification of that interpretation. Cover v. Craemer, 258 Iowa 29, 137 N.W.2d 595.

The majority attempts to distinguish the Wesley Acres case without expressly overruling it. I agree with the trial court in viewing the claimed factual dissimilarities as either immaterial under established principles of law or unsupported by the evidence.

It is pointed out the rest home in this appeal had been operated privately for profit prior to its acquisition by the plaintiff. This history should have no influence upon our determination. It is of no logical importance to plaintiff's claim of a charitable or benevolent intent that the real estate formerly had been the site of a commercial enterprise.

It is pointed out the operation was extensive. Unquestionably plaintiff does own many rest homes throughout the country and conducts a vast operation but it should not therefore be denied an exemption. Neither should plaintiff be penalized because its operation is efficient. See Annot., 37 A.L.R.3d 1191, 1248. In the record before us there is no showing the success of the undertaking in any way contravenes a charitable intent. Indeed there was no profitable operation for the individual rest home in question. Plaintiff was required under its rules to, and did, contribute the sum of $55,402 for expenses and absorbed an additional $105,933 in insurance, payroll, and other taxes for the benefit of Rest View.

It is claimed the case may be distinguished from Wesley Acres because the plaintiff is less closely bound to the Lutheran Church than Wesley Acres was shown bound in its church affiliation. In Wesley Acres the institution was officially and directly controlled by the church. This plaintiff is not so directly connected but is

controlled by the Lutheran Church. It was established by a Lutheran minister. All members of the board of directors, the general superintendent, the executive director, all regional directors, and all administrative assistants of the plaintiff are required to be Lutheran. The administrator of Rest View at the time of trial was an ordained minister, serving as administrator at some financial sacrifice, earning less than his salary would be in a regular pastorate. I disagree with the majority in the view there was "no evidence plaintiff ever cared for anyone as a matter of charity or benevolence" or that plaintiff's operation was "with a view of pecuniary profit."

In order to support a claim of tax exemption it should not be required of the claimant to profess and demonstrate a Franciscan indifference toward the property of the charitable operation. Neither should fiscal ignorance or irresponsibility be a necessary element. Efficiency in a charitable operation and the accumulation of the funds and properties have only to do with how successfully the enterprise is conducted. Success in the operation will make it possible to extend the services to more persons. This fosters the purpose and justification for all charitable exemptions which is to make it possible for charities to provide services which otherwise would have to be provided by the government at public expense. I agree with the holding of the Nebraska Supreme Court on exactly the same question in Evangelical Lutheran Good Samaritan Society v. Gage, 181 Neb. 831, 151 N.W.2d 446.

The concept of charitable tax exemptions is undergoing widespread criticism and attack. The attack has generally met with failure in the courts. See Annot., 45 A.L.R.3d 610. The majority, in addition to abandoning established Iowa precedent, embraces a view contrary to the weight of authorities in other states. Courts generally have referred the tax exemption dispute to its proper forum: the legislative branch.

The majority should observe the same judicial restraint pledged recently in Wisconsin Evangelical Lutheran Synod v. Regis, 197 N.W.2d 355, 357 (Iowa 1972) where we said: "We have every confidence the legislature will soon make changes in which the will of citizens shall be appropriately and precisely expressed."

I would affirm.