ATRIUM VILLAGE, INC., Appellant,

v.

The BOARD OF REVIEW, JOHNSON COUNTY, IOWA, Appellee.

No. 85–1708.

Supreme Court of Iowa.

Dec. 23, 1987.

William L. Meardon, Iowa City, for appellant.

J. Patrick White, Co. Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO and NEUMAN, JJ.

HARRIS, Justice.

Plaintiff Atrium Village (Atrium) is a nursing home and retirement facility which provides a residential home for the elderly in Hills, Iowa. It was established through the generosity of a former resident. The question is whether Atrium is entitled to a charitable exemption from real estate taxes. The county assessor, the county board of review, the district court, and the court of appeals in turn have denied the exemption. We agree.

Atrium is a nonprofit corporation, organized in 1980. The facility was constructed in 1981 and 1982. Louis Jenn donated $2.5 million for the construction of the facility and also created a trust to give Atrium $40,000 per year for fourteen years for its operation and maintenance. Atrium is exempt from federal income taxes.

No endowment is required for occupancy in Atrium. Applicants to the facility must however provide a report on his or her medical history and financial resources. Some factors considered in determining whether to admit an applicant are:

1. Whether the applicant is from the Hills area (preference);

2. Applicant's age (must be at least sixty);

3. Medical history and health condition of the applicant;

4. Ability of Atrium to provide services to the applicant, considering health and other factors;

5. Financial ability of the applicant to pay the monthly charges;

6. Reputation of the applicant for getting along with other people.

Monthly charges are fixed according to the board of directors' estimates of the marginal cost of maintaining the proper care for residents, enabling Atrium to break even. Any failure of an occupant to pay monthly charges would result in an increase in the monthly charge made to all others. Thus, where finances appear to be marginal, the board may require a guarantor. Atrium does not accept persons who at the time of application are receiving benefits under Title XIX, 42 U.S.C. §§ 1396a–1396p (1982). No occupant has yet been unable to pay the monthly rate. Atrium reserves the right to terminate the residential agreement.

The board of directors has established a reserve fund in the amount of $30,000 to meet emergencies and to provide care for any resident who becomes unable to make the monthly payments. Residents are not told such a fund exists. No part of this fund has yet been needed.

The directors are not given monetary compensation. Mr. Jenn did on one occasion pay for a Hawaiian vacation for all of

the board members and their spouses in appreciation of their time and efforts.

The county assessor denied Atrium's application for exemption from property taxes pursuant to Iowa Code section 427.1(9) (1985). Atrium appealed to the county board of review which also denied the exemption. Atrium then appealed under Iowa Code section 441.38 to district court. The district court also denied Atrium's claim. Upon Atrium's appeal from district court the case was transferred to the court of appeals which affirmed the district court judgment. The matter is before us on Atrium's application for further review.

■■■ I. Our review is de novo. *Southside Church of Christ v. Des Moines Bd. of Review*, 243 N.W.2d 650, 651 (Iowa 1976). We strictly construe the statutes exempting property from taxation. *Iowa Methodist Hosp. v. Board of Review*, 252 N.W.2d 390, 391 (Iowa 1977). Any doubt concerning an exemption must be resolved in favor of taxation. *Id.* The burden is upon the party claiming the exemption to show the property should not be taxed. *Id.*

II. Iowa Code section 427.1 (1985) provides in relevant part:

The following classes of property shall not be taxed: 9. Property of religious, literary and charitable societies. All grounds and buildings used ... by ... charitable, benevolent ... institutions and societies solely for their appropriate objects, ... not leased or otherwise used ... with a view to pecuniary profit.

Exemption statutes are premised on the theory that benefits received by the community from the facility outweigh the inequality caused by exemption of the property from taxation. *Dow City Senior Citizens Housing, Inc. v. Board of Review*, 230 N.W.2d 497, 499 (Iowa 1975). Exemptions are "a legislative recognition of the benefits received by society as a whole from properties devoted to appropriate objects of exempt institutions and the lessening of burden on the government." *South Iowa Methodist Homes v. Board of Review*, 257 Iowa 1302, 1305, 136 N.W.2d 488, 490 (1965). *See* Annotation, *Nursing Homes*

*as Exempt from Property Taxation*, 45 A.L.R.3d 610 (1972).

We have acknowledged a difficulty in reconciling the authorities on the subject, noting "[t]here is little discernible harmony." *South Iowa Methodist Homes v. Board of Review*, 173 N.W.2d 526, 533 (Iowa 1970). But certain important principles emerge. Homes will be taxed where "admission is limited to the physically and financially independent." *Id.* Institutional exemptions are viewed with more favor than exemptions to private individuals, but status as a corporation will not establish a right to tax exemption. *Id.* at 532. The objects and purposes of the corporation as expressed in its articles or bylaws are not controlling. *Evangelical Lutheran Good Samaritan Soc'y v. Board of Review*, 200 N.W.2d 509, 511 (Iowa 1972). The question must be determined from the use made of the property. *Id.*

In *Evangelical Lutheran Good Samaritan Soc'y v. Board of Review*, 200 N.W.2d at 513, we denied tax exempt status to a corporation. Our rejection was based on the fact that, as to each applicant, the institution had assurance of payment by a public agency plus a guarantor.

We also denied tax exempt status in *Dow City Senior Citizens Housing, Inc. v. Board of Review*, 230 N.W.2d at 499. That facility was also established through donation. Rental of units was precluded to persons with more than $9000 annual income. No admission fee nor financial statements were required. No apartments were rented to anyone unable to pay the rent either personally or with family assistance. No services were provided to tenants other than those usually available to apartment tenants. We stated that:

Plaintiff provides no care; it provides housing. It does not provide housing to those unable to pay its charges either personally or with third party help. Its charges are fixed at a level to make it self-sufficient. No concessions on rent are made to residents based on need. *Id.*

We did grant exempt status to a care facility in *South Iowa Methodist Homes v.*

*Board of Review,* 173 N.W.2d at 533. In that case the plaintiff provided the services of a house physician, as well as drugs and medicines for its residents. Even though a "room gift" was required of most of its residents, plaintiff's policy was to admit not less than 10% of its residents without a room gift. Residents unable to pay the monthly charges were subsidized by a reserve fund. The property was purchased with church funds. We stated that "plaintiff should not lose its exempt status because many of its residents can and do make room gifts and pay a monthly charge." *Id.*

We recently revisited the question in *Richards v. Department of Revenue,* 414 N.W.2d 344 (Iowa 1987). In *Richards,* applying a different scope of review, we acknowledged that two factors present there (and here) weigh in favor of an exemption: exemption from federal income tax and articles of incorporation which "clearly state its property and income are to be used exclusively for the needs of elderly persons." 414 N.W.2d at 351. But we were quick to add that, in assaying the genuineness of the charity, example is more important than precept. *Id.* We said that, while "the statute does not limit exemptions to facilities used solely by or for the financially destitute," (quoting *South Iowa Methodist Homes,* 173 N.W.2d at 531), "a truly charitable institution will make concessions on fees to residents unable to pay them." *Id.* at 353.

*Richards* is easily distinguishable from the present case. In *Richards* there was no indication of a policy excluding residents unable to pay full fees; the institution there had in fact admitted such persons. The *Richards* institution had a contractual obligation to provide lifetime residence and care to its residents if they became financially destitute. Atrium, by contrast, demonstrates a strong policy against admitting applicants or even retaining residents who are unable to pay the fees.

Mr. Jenn's public spirited generosity is to be commended. But a statutory exemption does not depend alone on lofty or generous motives on the part of the donor. Although such motives are almost always involved in charitable institutions, something more is required in order to qualify for a property tax exemption. Taxes lost to the public by reason of an exemption must be exacted from all other taxpayers. Hence the law requires that the institution be run for those who have a real need for it. If it is operated only for those who can well afford to pay their taxes it is not right to pass that burden along to others.

Upon our review of the whole record we agree that Atrium does not qualify under our statute as being used for charitable and benevolent objects. The application for exemption was properly rejected.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except SCHULTZ, J., who dissents.

SCHULTZ, Justice (dissenting).

The case law in this state is clear that "gratuitous or partly gratuitous care" of elderly persons is a charitable purpose under the tax exemption statute. *South Iowa Methodist Homes v. Board of Review,* 173 N.W.2d 526, 532 (Iowa 1970); *Hilltop Manor v. County Bd. of Review,* 346 N.W.2d 37, 39 (Iowa Ct.App.1984); *see Richards v. Iowa Dept. of Revenue,* 414 N.W.2d 344, 351 (Iowa 1987). The record in this case shows that the residents of Atrium Village are being provided gratuitous care. Louis Jenn provided for the facility by donating $2,500,000 outright and by creating a trust which provides $40,000 income annually. The board of directors has a special fund set aside to meet emergencies and to provide care for residents unable to make monthly payments. The facility has also received thousands of dollars from other contributors and thousands of hours of voluntary services from the community.

Because I cannot agree with the majority's conclusion that Atrium Village is not a charitable institution, I respectfully dissent.