**CITY OF OSCEOLA, Appellant,**

v.

**BOARD OF REVIEW OF CLARKE COUNTY, Appellee.**

No. 91–905.

Supreme Court of Iowa.

Oct. 21, 1992.

Richard O. McConville of Scalise, Scism, Sandre, McConville, Miller, Holliday, Schwarz, Carr & Renzo, Des Moines, for appellant.

Gary G. Kimes, County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal concerns the statutory tax exemption granted for municipal property that is "devoted to public use" under Iowa Code section 427.1(2) (1991). The property in question—a manager's residence attached to the airport terminal owned by the City of Osceola—was found by the Clarke County Board of Review not to come within the exemption. The City has appealed the district court's affirmance of the Board's decision. We now reverse.

Our review of the appeal is de novo. *Atrium Village, Inc. v. Board of Review, Johnson County,* 417 N.W.2d 70, 72 (Iowa 1987). The burden of proving entitlement to a tax exemption rests on the party seeking it. *Id.* at 72. Although taxation is the rule, and exemption the exception, our decisions in this realm rest largely on the unique facts of each case. *Airport Bldg. Corp. v. Linn County Assessor,* 406 N.W.2d 806, 808 (Iowa App.1987); *Dow City Senior Citizens Hous., Inc. v. Board of Review,* 230 N.W.2d 497, 499 (Iowa 1975).

The controversy stems from a decision made by the City of Osceola to abandon its old grass airstrip and build a 4000–foot concrete runway with two adjoining hangars and fuel storage tanks. In 1989 the City added a structure to serve as a combined terminal and residence for the airport manager. The white, two-story building resembles a suburban home. But at one end of the 1600–square–foot living space is a 25– by 30–foot terminal area with a covered porch, and at the other end sits an oversized garage that holds maintenance equipment as well as the manager's vehicle. Total cost of the building was only $63,000 because the City was able to secure labor free of charge through the industrial arts department of a local community college.

City officials testified that the decision to build the residence was prompted by concern for the security, maintenance, and efficient operation of the airport facility. Without round-the-clock supervision the runway had become a popular place for drag racing, causing repeated damage to the runway lights. There had also been episodes of aircraft vandalism. And there had been no one on-site to refuel airplanes or communicate with pilots after business hours. All this changed with the installation of a permanent residence and full-time manager.

The airport manager, and her family, live in the residence without cost in exchange for fulfilling the manager's duties. By contract she is required to supervise all airport activities, pump fuel, provide security, perform janitorial work and light maintenance on the terminal and hangars, monitor and replace runway lights, mow and trim grass around the terminal/residence building, and communicate in person and by radio with pilots. Although her regular working hours are 8:00 a.m. to 5:00 p.m., six days per week, she is expected to be on-site twenty-four hours per day or have someone else cover for her. In addition to housing, she receives ten cents per gallon for all gasoline pumped. In the ten months preceding trial, her salary for such services totaled $780. The record is silent concern-

ing the estimated cost of these twenty-four-hour services if a resident manager were not provided.

Based on this record, the Clarke County Board of Review decided—and the district court agreed—that as far as the residence was concerned, the City could not avail itself of the property tax exemption normally granted airport facilities. Two Code sections are pertinent. Iowa Code section 427.1(2) provides that city property shall not be taxed "when devoted to public use and not held for pecuniary profit." Section 427.1(20), relating specifically to public airports, exempts from taxation "[a]ny lands, the use of which ... has been granted to and accepted by the state or any political subdivision thereof for airport or aircraft landing area purposes."[1]

The parties agree that section 427.1(2) establishes a three-part test for exemption:

(1) the property must be owned by the city; (2) the property must be devoted to a public use; and (3) such property must not be held for pecuniary profit.

*Airport Bldg. Corp.*, 406 N.W.2d at 808.

The Board readily concedes the City's entitlement to a property tax exemption for the airport terminal and aircraft landing area. It also seems to concede that having a manager's residence at the terminal benefits the City. But it persuaded the trial court, and now urges in response to the City's appeal, that the residence does not fit the "devoted to public use" test of section 427.1(2). It argues that the privacy of the residence is inconsistent with public use. And it insists that fairness dictates a closer balance between public need and private benefit where tax exemptions are concerned.

█ It is true that exemption statutes rest on the theory that benefits received by the community from exempted uses outweigh the inequality caused when certain properties are freed from the burden of taxation. *Dow City Senior Citizens Hous.*, 230 N.W.2d at 499. Taxability does not turn on whether citizens are prevented from using the private quarters of the terminal. Public access to many public structures is limited. The question is the use made of the property. *Iowa West Racing Ass'n v. Iowa Dep't of Revenue*, 421 N.W.2d 880, 883 (Iowa 1988).

In ruling that the residence is not devoted to public use, the district court relied heavily on our decision in *Congregation B'Nai Jeshurun v. Board of Review*, 301 N.W.2d 755 (Iowa 1981). There we considered the propriety of a tax exemption for the housing of a janitor on church-owned property. Not unlike the case before us, temple members deemed it highly beneficial to have the janitor's living quarters adjacent to the temple grounds to reduce vandalism, improve after-hours accessibility, and to store maintenance equipment. *Id.* at 756. But the pertinent exemption statute furnished an exemption for buildings used by religious societies *"solely* for their appropriate objects...." *Id.* (quoting Iowa Code § 427.1(9) (1979) (emphasis added)). Reasoning that the tightly drawn statute revealed a legislative intent to narrow the exemption's scope, we held that where church-owned housing is separate from the "religious edifice itself" and occupied by "nonecclesiastical personnel," it does not qualify for the section 427.1(9) exemption. *Congregation B'Nai Jeshurun*, 301 N.W.2d at 759.

Despite the factual parallels between *Congregation* and the case before us, two important legal distinctions compel a different result. First, the exemption sought in *Congregation* under section 427.1(9) was limited by statute to use *solely* for religious purposes. We defined the term as meaning "used exclusively." *Congregation B'Nai Jeshurun*, 301 N.W.2d at 758 (quoting *Southside Church of Christ of Des Moines v. Des Moines Bd. of Review*, 243 N.W.2d 650, 655 (Iowa 1976)). No such limiting language is to be found in section 427.1(2). In fact we note that the legislature broadened the exemption in section 427.1(2) by removing the word "entirely"

1. On appeal, the parties appear to have abandoned their arguments under § 427.1(20). This section has been construed as applying only when a private party, not the municipality, owns the land on which the airport is located. *See* 1965 Op. Iowa Att'y Gen. 414 (1966).

from a predecessor statute which we discussed in an earlier case between these same litigants. *See City of Osceola v. Board of Equalization, Clarke County,* 188 Iowa 278, 280, 176 N.W. 284, 285 (1920) (citing Iowa Code § 1304 (1913) which rendered exempt property of a city "devoted *entirely* to public use...." (emphasis added)).

■ Second, we believe concerns regarding the separation of church and state make it reasonable that exemptions granted religious institutions be construed more narrowly than those afforded municipal authorities. The public use exemption frees the citizens of a municipality from being "taxed to raise money to pay taxes on their own property." *City of Muscatine v. Swickard,* 232 Iowa 1175, 1186, 6 N.W.2d 23, 28 (1942). The test, as one court has described it, is whether or not the building's primary use is to carry on "reasonably necessary or essential facilities to the efficient operation and maintenance of the airport." *City of Cheyenne v. Board of County Comm'rs,* 484 P.2d 706, 709 (Wyo. 1971); *see also City of Winfield v. Board of County Comm'rs,* 205 Kan. 333, 337, 469 P.2d 424, 428 (1970) (lease for wheat cultivation on airport property did not alter primary use of premises as public airport); 1967 Op. Iowa Att'y Gen. 57 (1968) (aircraft hangar owned by city and leased to private concern devoted to public use and not held for pecuniary profit exempt from property taxation); 1965 Op. Iowa Att'y Gen. 414 (1966) (cultivation of land adjacent to airport runways does not affect public character of property and municipality's entitlement to exemption under section 427.1(2)).

■ We are convinced that the City has met that test here. It established, essentially without contradiction, that the on-site living quarters are necessary and reasonable to efficiently perform the airport services undertaken by the City. Any benefit obtained by the airport manager or her family is merely incidental to the public purpose for which the building is used. We reject the county's argument that the cost of shifting the tax burden is wholly out of proportion to the benefit gained by the taxpayers from the exemption.

In summary, we hold that the combined residence/terminal meets the three-part test for a property tax exemption under Iowa Code section 427.1(2). The contrary judgment of the district court must be reversed. We remand for entry of judgment consistent with this opinion.

REVERSED AND REMANDED.