**PARTNERSHIP FOR AFFORDABLE HOUSING, LIMITED PARTNERSHIP GAMMA, An Iowa Limited Partnership, Appellant,**

v.

**BOARD OF REVIEW FOR the CITY OF DAVENPORT, Appellee.**

No. 95–394.

Supreme Court of Iowa.

June 19, 1996.

**162**

Thomas J. Pastrnak and Kenneth E. Payne of the Pastrnak Law Firm, P.C., Davenport, for appellant.

John R. Martin, Corporation Counsel for City of Davenport, Davenport, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The issue in the present case is whether plaintiff Partnership for Affordable Housing, an Iowa limited partnership, is entitled to a property tax exemption on improved real property known as the Courtland Apartments. The board of review for the city of Davenport denied the exemption and, on review, the district court agreed. After a de novo review of the record, we affirm.

I. *Background facts and proceedings.* In September 1984, Restore Davenport, Inc. (Restore), an Iowa nonprofit corporation, purchased an apartment complex in Davenport known as Courtland Apartments (Courtland), which consisted of thirty-seven one and two bedroom apartments. At that time, Courtland had no residents and was in need of renovation and rehabilitation.

In January 1985, Restore made a claim for a property tax exemption for Courtland in accordance with Iowa Code section 427.1(9) (1985). The board of review for the city of Davenport granted the exemption.

After six years and an expenditure of $1,300,000 by Restore and others to rehabilitate Courtland, the apartments languished without residents.[1] By the end of 1991, Restore had failed to place Courtland in service and the city of Davenport became responsible for payment of the federal HUD loan and the other private financing secured to renovate Courtland.

On September 15, 1992, Partnership for Affordable Housing, Limited Partnership Gamma, an Iowa limited partnership (Partnership), offered to acquire the controlling

---

1. Restore acquired financing for the rehabilitation of Courtland through a first mortgage loan from the federal department of housing and urban development (HUD). In December 1990, a carry-over allocation of low-income housing tax credits, *see* 26 U.S.C. § 42 (1988), was granted to Restore by the Iowa Finance Authority in the amount of $105,028. The rehabilitation agreements necessary to obtain the low income housing credits required Restore to rent the apartments at Courtland so that at least forty percent or more of the residential units were rent restricted and occupied by individuals whose in-

comes were sixty percent or less of the area median income. This meant, to comply with the requirement, a single person renting an apartment could not earn more than $16,000 per year, and a family could not earn more than $23,000 per year. In addition, Courtland was required under the HUD loan to rent to persons qualified to receive certain rent subsidies from the Davenport Housing Authority. By the time of the trial, twenty-seven of the thirty-five residents at Courtland received this subsidy and eight residents paid the rent restricted amount.

interest in Restore.[2] Under Partnership's offer to acquire Restore, Partnership agreed to

[p]ay all taxes under the laws of the State of Iowa which may be levied against the Courtland Apartments (land and improvements thereon). After Closing, *should it be determined [Courtland] is exempt from real property taxes*, then Partnership agrees to make a payment in lieu of real estate taxes to the City [of Davenport] as follows:

. . . .

(Emphasis added.)

Restore transferred its interest in Courtland to Partnership pursuant to a warranty deed, and Partnership assumed payment on the federal HUD loan originally granted to Restore. Restore remained in existence as a general partner of Partnership. Partnership instituted rental policies to govern the operation of Courtland. Among other provisions, the policies provided that not less than one apartment was to be made available rent-free to abused women who do not have a place to live.

In January 1993, Partnership filed a claim for a property tax exemption for the Courtland property under Iowa Code section 427.1(9) (1993) with the assessor and board of review for the city of Davenport (as Restore successfully had done as a nonprofit corporation in January 1985). In its exemption request, Partnership stated the described property was used for "rental to qualified, low income residents." In its certificate and agreement of limited partnership, Partnership described its business purpose as follows:

The purpose of the Partnership is to acquire, hold, invest in, construct, develop, rehabilitate, improve, maintain, operate, lease and otherwise deal with [Courtland]. The Partnership shall operate [Courtland] in accordance with any applicable [federal] HUD and Lender regulations and requirements. The partnership shall not engage in any other business or activity.

In June 1993, the board of review denied, without explanation, Partnership's claim for tax-exempt status for Courtland. Naming the board as defendant, Partnership filed a petition in district court to appeal the denial. *See* Iowa Code § 441.38. The parties submitted the case to the court for trial on stipulated facts and exhibits.

After a consideration of the stipulated record, the district court affirmed the board's denial of Partnership's claimed property tax exemption. The court found that (1) Courtland did not qualify as property used for charitable or benevolent objects, and that (2) Partnership's operation of Courtland was a use with a view to pecuniary profit. *See* Iowa Code § 427.1(9).

Partnership appeals from that final judgment.

■ II. *Standard of review.* Tax exemption appeals are equitable in nature and, therefore, our review of the district court's decision is de novo. Iowa R.App.P. 4; *Care Initiatives v. Board of Review,* 500 N.W.2d 14, 16 (Iowa 1993); *Southside Church of Christ v. Des Moines Bd. of Review,* 243 N.W.2d 650, 652 (Iowa 1976).

III. *Property tax exemption.* Iowa Code section 427.1 designates a number of classes of property which are exempt from property taxation and provides, in pertinent part:

The following classes of property shall not be taxed:

. . . .

9. *Property of religious, literary, and charitable societies. All grounds and buildings used* or under construction *by* literary, scientific, *charitable,* benevolent, agricultural, and religious *institutions* and societies *solely for their appropriate objects,* not exceeding three hundred twenty acres in extent and not leased or otherwise used or under construction with a view to pecuniary profit.

(Emphasis added.)

■ The rules of construction for tax exemption statutes are well settled:

---

**2.** At the time of the offer to acquire, Partnership was named Partnership for Affordable Housing, Incorporated, and was organized as a District of Columbia not-for-profit corporation.

We strictly construe the statutes exempting property from taxation. Any doubt concerning an exemption must be resolved in favor of taxation. The burden is upon the party claiming the exemption to show the property should not be taxed.

*Care Initiatives,* 500 N.W.2d at 16–17 (quoting *Atrium Village, Inc. v. Board of Review,* 417 N.W.2d 70, 72 (Iowa 1987) (citations omitted)); *City of Oskaloosa v. Board of Review,* 490 N.W.2d 542, 545 (Iowa 1992). In an exemption analysis, our paramount consideration is the actual use of the property claimed to be exempt under section 427.1(9). *Friendship Haven, Inc. v. Webster County Bd. of Review,* 542 N.W.2d 837, 841 (Iowa 1996); *Care Initiatives,* 500 N.W.2d at 17; *Iowa Methodist Hosp. v. Board of Review,* 252 N.W.2d 390, 392 (Iowa 1977); *Holy Spirit Retirement Home, Inc. v. Board of Review,* 543 N.W.2d 907, 910 (Iowa App. 1995) ("It is the character of the use, rather than the identity of the owner, which determines whether an organization's property is exempt from taxation."). Although taxation is the rule, and exemption the exception, our decisions in this realm rest largely on the unique facts of each case. *City of Osceola v. Board of Review,* 490 N.W.2d 539, 540 (Iowa 1992).

■ In order to meet its burden to prove tax-exempt status for Courtland pursuant to section 427.1(9), Partnership must prove each of the following factors by a preponderance of the evidence, *see Care Initiatives v. Board of Review,* 488 N.W.2d 460, 463 (Iowa App. 1992):

(1) Partnership was a charitable institution at the time of the claimed exemption,

(2) Partnership did not operate Courtland with a view to pecuniary profit, and

(3) the actual use of Courtland was solely for the appropriate objects of the charitable institution.

*See* Iowa Code § 427.1(9); *Friendship Haven,* 542 N.W.2d at 840; *Camp Foster YMCA v. Dickinson County Bd. of Review,* 503 N.W.2d 409, 411 (Iowa 1993); *accord Congregation B'Nai Jeshurun v. Board of Review,* 301 N.W.2d 755, 756 (Iowa 1981). If Partnership fails to meet its burden of proof on any of the three independent factors, its claim for property tax exemption for the Courtland property must fail.

On review from the city board of review, the district court found Partnership did not meet its burden on either factor (2) or (3) above, and did not decide factor (1) as a separate issue. On the issue of whether the actual use of Courtland was solely for the appropriate objects of the charitable institution, the court concluded

[a]lthough Partnership is meeting some community need for low-income housing, the rental policies show it is only providing the housing to persons who can pay the HUD determined rent either with Section 8 [of the Housing Act of 1937, *see* 42 U.S.C. § 1437f (1988),] subsidization or otherwise. This is not sufficient to show a charitable use [of Courtland].

On appeal, Partnership claims the district court erred in finding that Courtland was not operated as a charitable use and that it operated Courtland with a view to pecuniary profit. As we believe Courtland was not operated as a charitable use, we find that issue dispositive and therefore do not address other findings by the district court.

■ IV. *Alleged charitable use of Courtland.* Partnership must establish one of the two following propositions to prove it operated Courtland as a charitable use under Iowa Code section 427.1(9): (1) that Courtland affords a charitable benefit to its occupants, or (2) that, within Partnership as a whole, Courtland is a charitable activity.[3] Under (1), to determine whether Partnership's operation of Courtland qualifies as "charitable" under Iowa Code section 427.1(9), we consider several factors including:

(a) the establishment and operation of Courtland;

---

**3.** Proposition (2) is not relevant in the present case because Courtland is not a part of an integrated care facility or a component of a multifaceted corporate scheme. *Compare Friendship Haven,* 542 N.W.2d at 840 (cottages were one part of a multidimensional care facility/corporate scheme).

(b) the policies and practices relating to admission and retention of residents at Courtland,[4]

(c) the community support for Courtland, and

(d) the benefits provided to the community by Partnership's operation of Courtland.

*See Care Initiatives,* 500 N.W.2d at 17.

■ After our de novo review, we conclude, as did the district court, that Partnership failed to prove that it operated Courtland as a charitable use.

A. *Establishment and operation of Courtland.* Partnership contends that its use of Courtland as low and moderate income housing, regardless of its legal status as a limited partnership, conclusively establishes that it is entitled to an exemption under Iowa Code section 427.1(9). Although we believe the actual use of Courtland to be the determining factor in regard to evaluating Partnership's claim, as explained herein, we find Partnership's contention in the present case to be without merit.

Courtland, currently owned and operated by Partnership, was originally rehabilitated by Restore in 1985–86 with expenditures exceeding $1,300,000. Courtland's establishment as low income housing was aided by the Iowa Housing Finance Authority (Authority) which made an allocation of tax credits to Restore. The Authority also entered into a credit carryover agreement with Restore, indicating that the aggregate sum of approximately $105,028 could be reinvested as tax credits. The city of Davenport issued a certificate of occupancy for Courtland in 1987, but, as of 1991, Restore had failed to place Courtland in service. It was not until September 1992 that Partnership offered to purchase the controlling interest in Restore and assume the operation of Courtland.

Under the terms of Partnership's certificate of limited partnership, Partnership's sole purpose is to "hold, invest in, construct, develop, rehabilitate, improve, maintain, operate, lease and otherwise deal with" the Courtland project. Partnership's sole corporate asset and function was the operation of Courtland as a low income housing facility within the framework of Partnership's certificate of limited partnership and Courtland's rental policies. Courtland was not established or operated as a food shelter or other form of retreat for the homeless or indigent. Through the Courtland project, Partnership provided its residents with nothing other than housing partly subsidized by the federal government. *See Richards,* 414 N.W.2d at 351 ("For an institution to be charitable it should provide care in addition to housing.").

Although at least one of Partnership's two general partners was a nonprofit corporation (Restore) whose purpose was arguably charitable in nature, that general partner no longer operates Courtland. The sole purpose for which Partnership was formed was to acquire the controlling interest in Restore and operate Courtland pursuant to the terms of its certificate of limited partnership and Courtland's rental policies developed by Partnership. Partnership has identified no facts concerning the actual use of Courtland that would suggest Courtland had a solely charitable use as required by Iowa Code section 427.1(9). *See Richards,* 414 N.W.2d at 353 ("[A] truly charitable institution will make concessions on fees to residents unable to pay them."). In *Richards,* the charitable institution presented uncontroverted evidence that it guaranteed lifetime care to any resident that happened to become destitute. *Id.* Unlike the institution in the *Richards* case, Partnership presented no evidence that Courtland has in the past leased its units to persons who could not pay the subsidized

---

4. Other specific factors pertaining to this subissue include: whether admission to the facility is limited to the physically or financially independent, *see Atrium Village,* 417 N.W.2d at 72; whether the institution makes concessions on fees to residents who are unable to pay, *id.* at 73; whether there is a policy against retaining residents who are unable to pay rent and fees, *id.;* whether there exists and the residents are informed of a fund to help pay residents' rent, *id.*

at 71; whether applicants are screened to determine if they fall below a certain income level, *Friendship Ctr. W., Inc. v. Harman,* 464 N.W.2d 455, 459 (Iowa App.1990); and whether donations result in a reduction of the payments each resident is required to make to the property owner or landlord, *Richards v. Iowa Dep't of Revenue,* 414 N.W.2d 344, 353 (Iowa 1987). *See Holy Spirit Retirement Home,* 543 N.W.2d at 910–11.

rental fee or that Courtland would waive rent for lessees who became unable to pay. *See id.*

We believe the above facts weigh heavily against Partnership's claim for property tax-exempt status for Courtland.

B. *Policies and practices relating to admission and retention of residents at Courtland.* Partnership's housing policies for Courtland provide in pertinent part:

*Rental Policy*

The rental policy of the Courtland Apartments is to rent the apartments to qualified low-income residents. Qualified low-income residents are defined as residents that meet the income restrictions for the Low Income Housing Tax Credit program as regulated by the Iowa Housing Finance Agency. Generally, residents' incomes are limited not to exceed 60% of the Scott County median income levels adjusted for family size.

. . . .

*Charitable Use*

The Courtland Apartments will provide not less than one apartment unit to abused women who do not have a place to live. . . . Courtland will not charge rent for this unit.

Partnership's tenant selection policy provides in pertinent part:

. . . .

Each person who applies for an apartment at . . . Courtland will be required to complete a Pre–Application for Apartment, as well as written authorization which will enable [Partnership] to obtain qualifying data with regard to employment, income, assets, credit history, previous housing etc.

Tenant selection will be based on the following criteria:

1. The applicant's annual income, adjusted for family size, cannot exceed prescribed limits, as directed by and determined by the [Internal Revenue Service] and HUD, respectively, in connection with projects using Low Income Housing Tax Credits, such as . . . Courtland.

. . . .

3. The applicant should have a desirable credit rating from the credit bureau and from all credit references listed on the application; and be able to meet his continuing obligations, *including rent,* on a timely basis.

4. The applicant must have favorable references from all landlords in reference to payment history. . . .

. . . .

10. A waiting list will be maintained for . . . Courtland.

11. In-place tenants requiring transfer to a different size unit due to change in family composition will be given priority over other applicants on the waiting list. Preferences will apply to those receiving Section 8 Rental Assistance Payments. An applicant will qualify for a Federal Preference if any of the following conditions exist:

1. A. The applicant is . . . involuntarily displaced due to . . . [an] action by his/her housing owner which is beyond his/her control, other than a rent increase.

. . . .

3. The applicant pays 50% or more of his or her income for rent and utilities.

We believe these policies, when considered in their totality, militate against a finding of charitable use. Notwithstanding the policy designating one rent-free apartment for abused women (that makes up 1/37th percent of all apartments at Courtland), Partnership does not have a policy for Courtland to accept residents for admission without regard to their ability to pay. *See Care Initiatives,* 500 N.W.2d at 18 (even though Care Initiatives had such a policy, the court concluded other facts justified the district court's decision upholding denial of the requested property tax exemption). Partnership has introduced no evidence that it has ever waived rent for one of its residents. *See Mayflower Homes, Inc. v. Wapello County Bd. of Review,* 472 N.W.2d 632, 634 (Iowa App.1991). Also, we conclude one rent-free apartment out of thirty-seven total apartments does not qualify the entire property for a charitable use exemption. *See Friendship Haven,* 542 N.W.2d at 840 (the fact that, over a ten year period, two of a total of forty-four cottages

were occupied by persons who were given financial assistance or whose monthly occupancy fees had been waived was not enough to justify a charitable use exemption for the entire property); *Mayflower*, 472 N.W.2d at 634 (court of appeals concluded institution's charitable waiver of $18,000 to $50,000 entrance fee to three percent of residents moving into its retirement housing was not sufficient to justify charitable use exemption).

C. *Community support.* Partnership makes little effort to prove that its operation of Courtland has been aided or bolstered through community support. *See Richards*, 414 N.W.2d at 353 ("It is ... important that contributions of money, goods, and services have played *some* part in the establishment and operation of a charitable institution;" institution held to be charitable was founded on substantial donations of money, goods, and services). In the *Care Initiatives* case, the record reflected that Creston Manor, the nursing home for which a property tax exemption was sought, was the recipient of nearly 500 hours of volunteer services donated to enhance the quality of life and care for Creston Manor residents. *Care Initiatives*, 500 N.W.2d at 18. Although this fact militated in favor of tax-exempt status in *Care Initiatives*, it was not enough to overcome the other factors, such as establishment and operation of Creston Manor, that convinced us to affirm the board's denial of tax-exempt status to the nursing home.

Unlike in *Care Initiatives*, there is no evidence in the present record to suggest Courtland is or has ever been operated or maintained by volunteers from the Davenport area. Furthermore, Partnership has identified no other way in which the operation of Courtland is aided through community support.

D. *Community benefits.* Partnership claims its operation of Courtland benefits the Davenport community in many ways, including that Courtland provides affordable, low-rent housing for less fortunate members of the community and that one of Courtland's units is reserved for battered women in the community. We do not believe these admittedly laudable goals and purposes of Partner-

ship's operation of Courtland rise to the level of charity.

We have stated on several occasions that the "laudable goals of nonprofit organizations do not qualify them for property tax exemptions when those organizations use their *property* for other than direct charitable purposes." *Iowa W. Racing Ass'n v. Iowa Dep't of Revenue*, 421 N.W.2d 880, 882 (Iowa 1988); *see Atrium Village, Inc.*, 417 N.W.2d at 73 ("[A] statutory exemption does not depend alone on lofty or generous motives on the part of the donor.... [T]he law requires that the institution be run for those who have a real need for it."); *Dow City Senior Citizens Hous., Inc. v. Board of Review*, 230 N.W.2d 497, 499 (Iowa 1975) (stating not all laudable community contributions are charitable or benevolent within the meaning of section 427.1(9)). Laudable acts, such as providing partly subsidized housing for certain qualifying individuals and families, do not necessarily amount to charity. We have recognized several definitions of charity:

> Charity ... is active goodness.... It is fostering those institutions that are established to relieve pain, to prevent suffering, and to do good to mankind in general or any class or portion of mankind.
>
> ....
>
> Charity is defined as something done out of good will, benevolence, and a desire to add to the happiness or the improvement of one's fellow beings, and almost anything that tends to promote the well-being or well-being of social man.

*South Iowa Methodist Homes, Inc. v. Board of Review*, 173 N.W.2d 526, 532 (Iowa 1970) (quotations omitted). We have also stated charity "includes ... the gratuitous or partly gratuitous improvement of spiritual, mental, social and physical conditions of ... people...." *Andrews v. YMCA*, 226 Iowa 374, 383, 284 N.W. 186, 192 (1939); *accord Harman*, 464 N.W.2d at 458; *Hilltop Manor v. County Bd. of Review*, 346 N.W.2d 37, 39 (Iowa App.1984) (stating "the gratuitous or partly gratuitous care of the elderly is a charitable purpose").

In *Care Initiatives*, we rejected the exemption applicant's assertion that its act in admitting a person to the nursing home who

could neither afford the home's full private rate fee nor qualify for Title XIX benefits rose to the level of "charitable" community benefits. *Care Initiatives*, 500 N.W.2d at 18. In that case, the record reflected the nursing home had admitted only one such hardship patient and that admittee was charged an occupancy rate in excess of the Title XIX rate. *Id.*

Similarly, we conclude Partnership's operation of Courtland does not provide "charitable" benefits to the community. Any charity flows from federal subsidies, not Partnership, to the Courtland lessees under section 8 of the Housing Act of 1937, *see* 42 U.S.C. § 1437f, for the benefit of qualifying individuals.

V. *Disposition.* After our de novo review of the record, we conclude Courtland Apartments does not qualify for property tax-exempt status under Iowa Code section 427.1(9) because it is not being operated for a charitable use. Therefore, we affirm the district court's decision to uphold the board's denial of Partnership's tax exemption claim.

**AFFIRMED.**