# IN THE COURT OF APPEALS OF IOWA

No. 18-2147
Filed January 9, 2020

**CAPSTONE GROUP, INC.,**
Plaintiff-Appellant,

**vs.**

**GUTHRIE COUNTY BOARD OF REVIEW,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Guthrie County, Thomas P. Murphy,

Judge.


Capstone Group, Inc. appeals from the district court ruling that affirmed the

assessed value of its real estate. **REVERSED AND REMANDED.**


Teresa K. Baumann, Samuel E. Jones, and Laurie L. Dawley of

Shuttleworth & Ingersoll, Cedar Rapids, for appellant.

Brett Ryan of Watson & Ryan, PLC, Council Bluffs, for appellee.


Heard by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

We must decide whether a nonprofit community for the elderly with various levels of care qualifies for a property tax exemption. Capstone Group, Inc. (Capstone) appeals from the district court ruling that denied a property tax exemption for the facility. It argues the property is exempt from taxation because it is a charitable institution that operates the property solely for charitable purposes and without a view to pecuniary profit. We agree the entire property qualifies for the property tax exemption, and we reverse the district court and remand for entry of an order exempting the property.

### I. Background Facts and Proceedings.

Capstone is a tax-exempt 501(c)(3) corporation. In 2013, Capstone bought The New Homestead (TNH) nursing facility in Guthrie Center, the property at issue here. Before purchase and until this renewed assessment in 2017, TNH received property tax relief as a charitable nonprofit entity. To aid with the purchase of TNH, Capstone used a donation from a non-profit entity that had once owned skilled nursing care facilities in other states.[1] TNH sits on approximately ten acres and offers three levels of care directed at the elderly: independent living, assisted living, and skilled nursing.[2] TNH serves a five-county area in rural Iowa. Michael Michaud, president and treasurer of Capstone, testified TNH offers a "continuum

---

[1] This non-profit entity gifted $4.5 million to Capstone with recognition it would serve a charitable purpose.

[2] The parties refer to TNH's highest level of care as "skilled nursing," which is typically intended as temporary care. *See, e.g.*, Iowa Admin. Code r. 441-78.9(3) ("Skilled nursing services shall be available only on an intermittent basis."). TNH's advertising materials indicate the facility also makes long-term care available to its skilled-nursing residents.

of care," which allows individuals with a variety of care needs to reside in the same community.

At first glance, the seventeen independent-living units operate much like regular landlord/tenant apartments. But unlike a regular apartment, the monthly rental includes several amenities, such as housekeeping, maintenance and repair, utilities, and a daily meal. The residents in these units, along with the other levels of care, all benefit from free quality-of-life enrichment activities. These occur twice a day along with a monthly field trip. While TNH does not provide medical care to its independent-living residents, residents may contract with third parties for medical care in their independent-living apartment. Michaud testified one current independent-living resident receives public housing assistance and another resident recently applied for assistance.

The next level of care is the assisted-living units. TNH has fourteen of these assisted-living apartments. Fees cover the room rental, three daily meals, other amenities, and individualized assistance. According to a census Capstone prepared for trial, two assisted-living residents were currently using an elderly waiver to pay for their apartments.[3]

Finally, TNH maintains sixty-four skilled-nursing beds, all of which are certified for payments from Medicaid, also known as Title XIX. Effective October 1, 2017, the daily skilled-nursing fees range from $217 for a semi-private room to $229 for a private room. Regardless of TNH's skilled-nursing fees, Medicaid only

---

[3] "The elderly waiver is a portion of the Title XIX Medicaid insurance plan, and it covers the basic care portion of assisted living." *Sioux Ctr. Cmty. Hosp. & Health Ctr. v. Bd. of Review*, No. 05-1278, 2006 WL 1230012, at *3 n.6 (Iowa Ct. App. Apr. 26, 2006).

reimburses TNH approximately $173 per day per qualified skilled-nursing resident. For 2016, Capstone reported a Medicaid utilization rate of 52.08% for skilled-nursing beds with an average daily cost per skilled-nursing resident of $192.08.

Michaud testified TNH has produced a cumulative profit of 1.22% since Capstone's purchase in 2013. It sustained losses in 2016 and 2017. Healthcare of Iowa, Inc. (Healthcare), a third-party for-profit company, manages TNH. Capstone pays Healthcare a percentage of TNH's revenues for its management services plus an additional monthly fee for accounting.

At trial, Michaud explained the resident mix and their financial resources. Residents pay TNH using personal assets, private insurance, or Medicaid or other public assistance. Michaud testified Capstone has never denied anyone admission to TNH or evicted anyone for financial reasons, though Capstone may deny admission because of medical needs. If a resident exhausts their personal resources, Capstone works with the resident to qualify for Medicaid or other public assistance. Capstone does not provide free skilled-nursing care because Medicaid typically pays when a skilled-nursing resident lacks resources. But Capstone may be unable to collect for past care if a skilled-nursing resident dies or otherwise leaves the facility without Medicaid approval. In 2017, TNH charged $175,000 in bad debts.

Even though TNH was exempt from property tax when Capstone bought the property, on May 23, 2017, the Guthrie County Board of Review (Board) changed TNH's classification to taxable multi-residential property. The assessor recommended the change. On June 12, Capstone appealed the Board's decision directly to the district court. Capstone's claim proceeded to trial on September 12,

2018. Capstone presented an expert opinion from Jeffrey Steggerda, who concluded "TNH operates like a community based nonprofit organization" that provides charity by accepting a high number of Medicaid patients while maintaining relatively high staffing levels. On November 16, the court issued its opinion rejecting Capstone's exemption claim and affirming the Board's classification of the TNH property as taxable. Capstone appeals.

## II. Standard of Review.

We apply de novo review to an appeal of a property tax assessment. *Compiano v. Bd. of Review*, 771 N.W.2d 392, 395 (Iowa 2009). So we give weight to the fact findings of the district court, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

"In an appeal from a decision by the board of review, the district court hears the case in equity and determines anew those assessment issues previously presented to the board." *Compiano*, 771 N.W.2d at 396. "There is no presumption the assessment or valuation at issue was correct." *Id.* "The taxpayer must establish a ground for protest by a preponderance of the evidence." *Id.* Tax exemption "statutes are strictly construed with any doubt resolved in favor of taxation and against exemption." *Parshall Christian Order v. Bd. of Review*, 315 N.W.2d 798, 801 (Iowa 1982).

## III. Analysis.

Capstone argues TNH is entirely exempt from property tax under Iowa Code section 427.1(8) (2017). This subsection provides a property tax exemption for "[a]ll grounds and buildings used or under construction by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely

for their appropriate objects . . . and not leased or otherwise used or under construction with a view to pecuniary profit." Iowa Code § 427.1(8)(a). Iowa courts have identified three factors a charitable entity must satisfy to claim this exemption: "(1) [the entity] was a charitable institution at the time of the claimed exemption, (2) [the entity] did not operate [the facility] with a view to pecuniary profit, and (3) the actual use of [the facility] was solely for the appropriate objects of the charitable institution." *Carroll Area Child Care Ctr., Inc. v. Carroll Cty. Bd. of Review*, 613 N.W.2d 252, 254–55 (Iowa 2000) (quoting *P'ship for Affordable Housing, Ltd. v. Bd. of Review*, 550 N.W.2d 161, 164 (Iowa 1996)).

> A review of our prior cases demonstrates that this state is committed to a broad definition of "charity." . . . [C]harity is not limited to providing assistance to the needy. It encompasses all humanitarian activities. Such activities include the gratuitous or partly gratuitous improvement of spiritual, mental, social and physical conditions of young people, as well as of the elderly.

*Id.* at 255 (internal quotations and citations omitted). A charitable facility for the elderly must (1) "provide some level of care, as opposed to mere housing" and (2) provide care "on a gratuitous or partly gratuitous basis." *Id.* at 256. A charitable facility may provide gratuitous or partly gratuitous care by "subsidiz[ing] the care of those who are unable to pay" or by "us[ing] charitable contributions to cover the costs of establishing the facility and some portion of the ongoing operating expenses, thereby subsidizing the cost of the facility for all persons who use it, regardless of their ability to pay." *Id.* at 257.

Our inquiry is whether the Capstone facility operates as a charitable institution. It is a fact question. *Richards v. Iowa Dep't of Revenue*, 414 N.W.2d 344, 350 (Iowa 1987) (holding that a substantial gift at inception coupled with the

policy to admit those unable to pay full rate and the use of funds for charitable purposes weighed in favor of the exemption). When viewing this facility in its totality, we are convinced Capstone is a charitable institution that operates TNH without a view to pecuniary profit and solely for the appropriate charitable objects. The gratuitous or partly gratuitous care of elderly persons is a charitable purpose. *Evangelical Lutheran Good Samaritan Soc'y v. Bd. of Review*, 267 N.W.2d 413, 414 (Iowa Ct. App. 1978) (holding that a rate of return of just over three percent reflected a facility not being operated with a view for profit). Capstone itself is a nonprofit organization that used a donation to purchase TNH. It operates TNH at a slim cumulative profit of 1.22% since its purchase, with an occasional annual net loss. As a nonprofit organization, it returns these profits to the facility. It accepts residents regardless of ability to pay, and it works with those who lack resources to secure Medicaid or other public assistance. While it reserves the right in its resident agreements to evict residents for nonpayment, it has never done so. It loses money for each skilled-nursing resident it accepts who uses Medicaid. As a result of its admission policies, over half of its skilled-nursing residents receive Medicaid, which shrinks its slim profits. Based on Capstone's expert testimony, the facility also charges lower rates than other like facilities offering lower levels of quality nursing care. We distinguish this case from those nursing home cases in which rates were higher and a profit motive was central. *See Evangelical Lutheran Good Samaritan Soc'y,* 611 N.W.2d at 488–89 (assuming profit motive based on net of ten percent return, payment of four percent of revenue to national organization with no benefit to residents, charges that exceeded other like units,

lack of charitable contributions, low volunteer hours, and failure to have policy accepting persons without resources).

TNH accepts volunteer hours, financial donations, and other gifts.[4] While these contributions are relatively small compared to its operating budget, they help "provide a more welcoming and comfortable atmosphere for its residents." *Bethesda Found. v. Bd. of Review*, 453 N.W.2d 224, 227 (Iowa Ct. App. 1990). TNH used donations to create an activity fund for quality-of-life activities that benefit all residents. It was in the process of establishing a charitable foundation during trial. Even the independent-living residents, who receive no medical care from TNH, benefit from the social activities in the facility's continuum-of-care environment. The "last move" concept contemplates care for residents that start with less costly needs but ultimately require expensive services. Additionally, TNH provides charity to the general community through various means, including donating equipment and money to community organizations, providing meeting space to outside groups, loaning medical equipment to individuals in need, and partnering with the local school for nursing education.

Lastly the Board argued that paying a management service to operate the facility equates to using the property with a view toward pecuniary profit. A percentage of TNH's gross revenues compensate Healthcare, a third-party for-profit company, for its management of the facility.[5] Such a management

---

[4] On top of cash raised, the facility received a large handicap-accessible van and regular help from thirty-five community volunteers.

[5] When Capstone purchased TNH, a different third-party organization managed the facility under a similar management contract. Yet TNH received tax exempt status under this prior management arrangement.

agreement does "not necessarily disqualify an otherwise nonprofit group." *Care Initiatives v. Bd. of Review*, 488 N.W.2d 460, 462–63 (Iowa Ct. App. 1992). Capstone's expert Steggerda testified most nursing facilities—both not-for-profit and for-profit—have management agreements like the one between TNH and Healthcare. Michaud testified Healthcare produced significant cost savings for TNH that it could not realize independently. Furthermore, we find no indication the agreement is "merely a vehicle for transferring profits." *Id.*

## IV. Disposition.

Because Capstone is a charitable institution that operates TNH without a view to pecuniary profit and solely for the appropriate charitable objects, the TNH realty qualifies in its entirety for the property tax exemption under Iowa Code section 427.1(8). We reverse the district court and remand for entry of an order exempting the TNH property from tax.

**REVERSED AND REMANDED.**